In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00188-CR


______________________________




KIMBERLY RENEE PARKER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


 Gregg County, Texas


Trial Court No. 32659-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Kimberly Renee Parker's erratic, suspicious driving at around 3:45 a.m. led Officer John
Rowe to discover that her vehicle registration was expired. When Rowe stopped Parker's vehicle,
he learned that Parker was jittery, appeared to be under the influence of methamphetamine, and had
outstanding warrants for her arrest. Parker and her lone passenger were both arrested and placed in
the back of a patrol car. The subsequent search of Parker's vehicle yielded 7.88 grams of
methamphetamine and many drug-related items. Parker was convicted of possession of
methamphetamine in an amount between four and 200 grams and was sentenced to sixteen years'
imprisonment and assessed a $10,000.00 fine. We affirm the judgment of the trial court because
(1) Parker failed to preserve any error in the admission of the evidence found in the search of her
vehicle, and (2) Parker's sentence is not disproportionate to the offense.

 Rowe was on patrol very early one morning when he spotted Parker driving a vehicle well
below the speed limit while weaving within the lane. Thinking she might be intoxicated, he decided
to follow her. The turn signal was sporadically blinking on and off in a manner that led Rowe to
believe the "bulb was shorting out." He ran the vehicle's license plate and registration while
following. Dispatch advised that the registration was expired, and Rowe decided to pull Parker over. 
She turned without signaling before coming to a stop.

 When Rowe first approached Parker, she appeared nervous and jittery. His "very first
impression was I'm dealing with somebody that's on some kind of drug," "tweaking, that's where
someone is sped up on speed, methamphetamines." Rowe called for backup due to Parker's
mannerisms, and because a male passenger was present. Officer Jerry Wayne McDaniel arrived at
the scene and observed that Parker could not "keep her hands still." Based on his experience and
training, it was also apparent to McDaniel that Parker was under the influence of methamphetamine. 
 Parker had no identification. Rowe asked her to step out of the car. As she stepped out, both
officers thought they saw a gun underneath the driver's seat. They quickly handcuffed Parker, but
discovered they mistook a hairbrush handle for the handle of a handgun. Nevertheless, a name and
birth date check revealed that Parker had outstanding warrants for her arrest, and she was placed in
the back of a patrol car. A weapons frisk of the passenger produced brass knuckles, and the
passenger was also arrested and placed in a patrol car for possession of a prohibited weapon. 
Subsequently, the officers searched the vehicle. 

 Among various other items, officers found in the vehicle 7.88 grams of methamphetamine,
a metal tube pipe and glass pipe commonly used to smoke methamphetamine, a broken glass pipe,
tin foil with residue, and another piece of aluminum foil charred by heat.

 McDaniel testified that the search also revealed "a flask-type balloon which was--the flask
contained a dark colored substance, had the balloon that was attached, had black electrical tape
wrapped around the balloon, it was pulled down over the neck of the flask, and it was emitting a
smoke that was coming off of it." Parker's counsel affirmatively stated there was no objection to the
introduction of photographs depicting this contraption. The officers found "several other precursors
. . . used to manufacture methamphetamine," all admitted with counsel's affirmative statement of no
objection, and displayed for the jury. They included: a backpack containing a Scooby Doo note pad
with a list of ingredients and instructions for manufacturing methamphetamine, Lorazepam and
Alprazolam pills, a hot plate used to create a chemical reaction to break down pills, a bag containing
razor blades, a pill box, a metal box, balloons, a silver spoon, acetone solvent used during the
manufacture of methamphetamine, a dish designed to "powder out the finished product from the
liquid to go to crystalline," and a heat gun used to flash the solvent off the finished product. 

(1) Parker Failed to Preserve Any Error in the Admission of the Evidence Found in the Search
of Her Vehicle

 Parker asserts that the evidence of her guilt was improperly admitted, as it was the fruit of
an illegal search of her vehicle. (1) We note three glaring problems with her assertion on appeal.

 First, while Parker filed a motion to suppress the evidence obtained from the search of her
vehicle, she failed to request a ruling from the trial court. Second, her counsel affirmatively stated
on the record that he had no objection to the introduction of the methamphetamine and other items
recovered in the vehicle. Third, no objection was made to Rowe's and McDaniel's testimony
recounting the fruits of their search.

 As a prerequisite to presenting a complaint for our review, a party must have made the
complaint to the trial court by a timely request, objection, or motion, which was ruled on by the trial
court expressly or implicitly, or which it refused to rule on despite complaint. Tex. R. App. P. 33.1. 
"Even constitutional rights, such as protection from an unlawful search and seizure, can be waived
by failing to object in a timely manner." Stults v. State, 23 S.W.3d 198, 206 (Tex. App.--Houston
[14th Dist.] 2000, pet. ref'd) (citing Little v. State, 758 S.W.2d 551, 564 (Tex. Crim. App. 1988)). 
"An objection should be made as soon as the ground for objection becomes apparent, which is
generally when the item is offered into evidence." Id. at 205 (citing Dinkins v. State, 894 S.W.2d
330, 355 (Tex. Crim. App. 1995)). 

 To preserve error on a claim of illegal seizure, Parker was required to obtain a ruling on a
motion to suppress or object during trial. Bollinger v. State, 224 S.W.3d 768, 778 (Tex.
App.--Eastland 2007, pet. ref'd) (citing Dunavin v. State, 611 S.W.2d 91, 97 (Tex. Crim. App.
1981)); Sands v. State, 64 S.W.3d 488, 491 (Tex. App.--Texarkana 2001, no pet.); Ortiz v. State,
930 S.W.2d 849, 855 (Tex. App.--Tyler 1996, no pet.) (absent a ruling, counsel's motion to suppress
the evidence was insufficient to preserve error on unlawful search complaint) (citing Calloway v.
State, 743 S.W.2d 645, 650 (Tex. Crim. App. 1988)). 

 Because Parker failed to preserve this point of error for our review, we overrule it. 

(2) Parker's Sentence Is Not Disproportionate to the Offense

 Parker also claims her sentence was disproportionate given the mitigating testimony
presented during the punishment phase about her character, hardships she suffered in life, and the
possibility that some of the items found in the car could have belonged to the passenger. (2) We
disagree. 

 Texas courts have traditionally held that, as long as the punishment assessed is within the
range prescribed by the Legislature in a valid statute, the punishment is not excessive, cruel, or
unusual. See, e.g., Jordan v. State, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973). Possession of
methamphetamine in an amount between four and 200 grams is a second-degree felony offense. 
Tex. Health & Safety Code Ann. § 481.115(d) (Vernon 2003). "An individual adjudged guilty
of a felony of the second degree shall be punished by imprisonment in the institutional division for
any term of not more than 20 years or less than 2 years." Tex. Penal Code Ann. § 12.33 (Vernon
2003). Additionally, a fine of up to $10,000.00 may be imposed. Id. Parker's sentence falls within
the applicable statutory range.

 That does not end our inquiry. A prohibition against grossly disproportionate punishment
survives under the Eighth Amendment to the United States Constitution apart from any consideration
of whether the punishment assessed is within the range established by the Legislature. U.S. Const.
amend. VIII; see Harmelin v. Michigan, 501 U.S. 957 (1991) (Scalia, J., plurality op.); Solem v.
Helm, 463 U.S. 277, 290 (1983); Jackson v. State, 989 S.W.2d 842, 846 (Tex. App.--Texarkana
1999, no pet.); Lackey v. State, 881 S.W.2d 418, 420-21 (Tex. App.--Dallas 1994, pet. ref'd); see
also Ex parte Chavez, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006) (describing this principle as
involving a "very limited, 'exceedingly rare,' and somewhat amorphous" review).

 First, we engage in an initial threshold comparison of the gravity of the offense with the
severity of the sentence to determine whether it leads to an inference of gross disproportionality. 
Harmelin, 501 U.S. at 1005; see McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992); Lackey,
881 S.W.2d at 420-21. Only then do we compare the sentence at issue to the sentences imposed for
similar crimes in the same jurisdiction and sentences imposed for commission of the same crime in
other jurisdictions. Harmelin, 501 U.S. at 1005; Solem, 463 U.S. at 292; McGruder, 954 F.2d at
316; Mullins v. State, 208 S.W.3d 469, 470 (Tex. App.--Texarkana 2006, no pet.); Lackey, 881
S.W.2d at 420-21. 

 In this case, Parker's sentence was not grossly disproportionate to the gravity of the offense,
especially in light of the evidence presented during the trial and punishment phases. Even if it was,
no evidence in the record allows us to compare Parker's sentence to the sentences imposed on other
persons in Texas or on persons in other jurisdictions who committed a similar offense. See Latham
v. State, 20 S.W.3d 63, 69 (Tex. App.--Texarkana 2000, pet. ref'd); Davis v. State, 905 S.W.2d 655,
664-65 (Tex. App.--Texarkana 1995, pet. ref'd). Without such evidence, the record before us does
not support Parker's claim of demonstrable error. Cf. Jackson, 989 S.W.2d at 846 ("there is no
evidence in the record reflecting sentences imposed for similar offenses on criminals in Texas or
other jurisdictions by which to make a comparison").

 We affirm the judgment of the trial court.




 

 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 21, 2009

Date Decided: July 24, 2009


Do Not Publish
1. The exception allowing a warrantless search of a motor vehicle incident to an arrest does
not justify a search of a vehicle after the occupants of the vehicle have been handcuffed or otherwise
secured. Arizona v. Gant, ___ U.S. ___, 129 S.Ct.1710, 1714, 173 L.Ed.2d 45 (2009). The
exception authorizes a search within an arrestee's immediate control to prevent the arrestee from
gaining possession of a weapon or destroying evidence. Id. Thus, when an arrestee is secured so
he or she cannot access a weapon or evidence in his or her vehicle, a search (otherwise unauthorized)
of the arrestee's vehicle violates the Fourth Amendment to the United States Constitution. Id. at
1719.

 Parker contends that Gant applies to her situation because she was allegedly arrested for the
outstanding warrants and placed in the back of the patrol car before the search of her vehicle. 
Although the facts of this are distinguishable from Gant, we need not address this unpreserved issue.
2. This claim was appropriately preserved through a motion for new trial. See Williamson v.
State, 175 S.W.3d 522, 523-24 (Tex. App.--Texarkana 2005, no pet.); Delacruz v. State, 167
S.W.3d 904 (Tex. App.--Texarkana 2005, no pet.). 



en="false"
 UnhideWhenUsed="false" Name="Colorful Shading Accent 4"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00231-CR

                                                ______________________________

 

 

                     REGENA NELL ECHOLS GALLAGHAN,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the Sixth
Judicial District Court

                                                             Lamar County, Texas

                                                            Trial
Court No. 22356

 

                                                          
                                        

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            During her
revocation[1]
hearing, Regena Nell Echols Gallaghan[2]
testified that, when her local Wal-mart store refused to take back three DVDs
she had purchased, but that were messed up, she got very angry and
personally traded them out for the same titles from the shelves of the
store.  She acknowledged that her action
in doing so was very stupid.  The
States motion to revoke Gallaghans community supervision alleged that she was
guilty of theft of the traded DVDs and that she had failed to pay court
costs, attorneys fees, and a fine pursuant to the conditions of her community
supervision.  Gallaghan appeals the
revocation of her community supervision asserting that the evidence is
insufficient to prove either that she stole from Wal-Mart in violation of the
conditions of her community supervision or that she had the ability to pay the
court costs, attorneys fees, and fine. 
Because we find that the greater weight of the credible evidence could
create a reasonable belief that Gallaghan committed theft in violation of the
condition of community supervision requiring her to abstain from committing an
offense against the laws of Texas, we affirm the trial courts judgment.  

            We review the trial courts
decision to revoke community supervision for an abuse of discretion.  Rickels
v. State, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); In re T.R.S., 115 S.W.3d 318, 320 (Tex. App.Texarkana 2003, no
pet.).  The trial court does not abuse
its discretion if the order revoking community supervision is supported by a
preponderance of the evidence; in other words, if the greater weight of the
credible evidence would create a reasonable belief that the defendant has
violated a condition of his or her community supervision.  Rickels,
202 S.W.3d at 76364; T.R.S., 115
S.W.3d at 32021.  We examine the evidence
in a light most favorable to the trial courts order.  Cardona
v. State, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); T.R.S., 115 S.W.3d at 321; Pierce
v. State, 113 S.W.3d 431, 436 (Tex. App.Texarkana 2003, pet. refd)
(citing Garrett v. State, 619 S.W.2d
172, 174 (Tex. Crim. App. [Panel Op.] 1981)).  If a single ground for revocation is supported
by a preponderance of the evidence and is otherwise valid, then no abuse of
discretion is shown.  Sanchez v. State, 603 S.W.2d 869, 871
(Tex. Crim. App. [Panel Op.] 1980); T.R.S.,
115 S.W.3d at 321 (citing Stevens v.
State, 900 S.W.2d 348, 351 (Tex. App.Texarkana 1995, pet. refd)).

            Gallaghan
argues that her plea of true to the States motion to revoke community
supervision was not a plea as to each and every allegation.  Thus, she argues that the State was required
to introduce evidence to prove by a preponderance of the evidence that she
committed an offense in violation of the terms of her community supervision or
that she had the ability to pay, but did not pay the court costs, attorneys
fees, and fines ordered by the court.

            Gallaghan filed a
written plea to the motion to revoke community supervision, in which she
acknowledged in writing that each and every allegation contained in the
Petition was true.[3]  Gallaghan also pled true in open court:

            THE
COURT:  Okay.  Maam, on Cause Number 22356, which is a
motion to revoke your community supervision, how do you plead, truethat you
violated the terms and conditions of your community supervision, are those
allegations true or not true?

 

            DEFENDANT:  True.

 

The theft allegation contained within the motion to revoke Gallaghans
community supervision gave rise to a separate prosecution for theft, in which
Gallaghan also pled guilty.[4]  A plea of true, standing alone, is sufficient
to support the revocation of community supervision.  Cole v.
State, 578 S.W.2d 127, 128 (Tex. Crim. App. [Panel Op.] 1979).

            Also,
Gallaghans husband, John, testified that Gallaghan had anger issues and
became angry on discovering that DVDs she had purchased from Wal-Mart were
messed up.  John testified, She went to
take them back; they refused to take them because they were already opened.  Well, she got upset and she did what she had
to do.  Gallaghan, herself, testified
that she traded [the DVDs] out.[5]  

            Considering
the record in a light most favorable to the trial courts ruling, the trial
court could have found that the State met its burden to prove by a
preponderance of the evidence that Gallaghan committed theft, either by the
written and oral pleas of true, or through the testimony of Gallaghan and her
husband.  Therefore, the trial court did
not abuse its discretion in revoking Gallaghans community supervision.[6]

            We affirm
the judgment of the trial court.

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          June
28, 2011  

Date Decided:             July
15, 2011

 

Do Not Publish











[1]Gallaghans
community supervision resulted from her original conviction for the underlying
offense of credit/debit card abuse, repeat offender, and resulting sentence of
six years confinement with a $480.00 fine. 

 





[2]The
courts judgment in this case refers to Gallaghan as Regena Echols.  In companion case number 06-10-00232-CR, the
judgment refers to her as Regena Nells Echols Gallaghan, and in cause number
06-10-00233-CR, she is referred to as Regena Nell Gallaghan.  To avoid confusion, we list Gallaghans full
name in this opinion as well as in our opinions in the above-referenced
companion cases.





[3]Gallaghan
asserts that her written judicial confession was not introduced as evidence at
the trial courts hearing and cannot be considered.  We disagree. 
The written confession signed by Gallaghan was made as part of plea
admonishmentsStates Exhibit No. 1filed with the district clerk and included
in the clerks record that is before us. 
We review the entire record when reviewing complaints regarding sufficiency
of the evidence.  Jackson v. Virginia, 443 U.S. 307, 334 (1979).

 





[4]Gallaghans
pleas on her motion to revoke in this cause, as well as a motion to revoke in
another cause for an underlying offense of forgery, and the separate theft
charge arising from the Wal-Mart incident were all heard simultaneously.  Filing separate briefs, Gallaghan appealed
the trial courts revocation of community supervision for forgery in our cause
number 06-10-00232-CR, as well as her conviction for theft in cause number 06-10-00233-CR.

 





[5]Gallaghan
argues that her testimony did not establish that she left the store with the
DVDs or that the offense was committed in the county where the trial was
sought.  However, theft is unlawful
appropriation, or taking, of property with the intent to deprive the owner of
the property.  Tex. Penal Code Ann. § 31.03(a) (West 2011).  [A]sportation--the act of carrying away or
removing property--is not an element of statutory theft.  Hawkins
v. State, 214 S.W.3d 668, 670 (Tex. App.Waco 2007, no pet.); see Nautilus Ins. Co. v. Steinberg, 316
S.W.3d 752, 756 (Tex. App.Dallas 2010, pet. denied) (citing Hill v. State, 633 S.W.2d 520, 521 (Tex.
Crim. App. 1982)); see also Edwards v.
State, 440 S.W.2d 648, 649 (Tex. Crim. App. 1969).  Also, because the conditions of Gallaghans
community supervision prevented her from committing an offense against the
laws of this State, or any other State or of the United States, the theft was
not required to be committed in Lamar County for the purposes of the revocation
proceeding.

 





[6]Because
the ground alleging Gallaghan violated her community supervision by committing
theft was supported by a preponderance of the evidence, we need not reach
Gallaghans complaints that the State failed to prove she had the ability to
pay the court costs, attorneys fees, and fines imposed by the conditions of
community supervision.