Opinion issued May 10,
2012.



In The

Court of Appeals

For The

First District of
Texas

————————————

NO.
01-10-00824-CR

———————————

Tafrica Shanta Barrett,
Appellant

V.

The State of Texas,
Appellee



 



 

On Appeal from the 263rd
Judicial District Court 

Harris County, Texas



Trial Court Case No. 1186903

 



 

MEMORANDUM
OPINION

Tafrica Shanta
Barrett was charged by indictment with theft and pleaded not guilty.  After a jury found her guilty of
third-offender theft it assessed a punishment of one and a half years in prison.  See Tex. Penal Code Ann.

§ 31.03(e)(4)(D) (West Supp. 2011).  On appeal, Barrett
contends that the evidence was insufficient to support the jury’s verdict.  We affirm. 

Background

On October 9, 2008, Deputy
R. Delrosario was working as a loss prevention officer for Wal-Mart.[1]  While patrolling the
store, Delrosario saw Barrett and Sursensa Turner take
forty-three cans of baby formula off the shelves and place them into a shopping
cart.  Delrosario watched Barrett and
Turner walk to a different department and move the formula from the first
shopping cart into a large blue plastic container inside a second shopping
cart.  According to Delrosario, the women
then put various items, including clothing that they had removed from hangers, into
the same container, closed the lid, and placed two rugs and a box of diapers on
top of the full container.[2]  Delrosario explained that large items like the
container, diapers, and rugs would not fit in a bag and would be marked with a
sticker at checkout to show that the items had been purchased.

Testimony at trial
showed that before reaching the exit door, a customer would have to walk past
the registers, through an electronic security system called an E.A.S., and
through a vestibule containing shopping carts. 
Delrosario testified that the E.A.S. would set off alarms if the
security tags on certain items had not been deactivated.  Delrosario stated that he would stop people
if they walked past the final point of sale with merchandise that they had not
purchased.  According to Delrosario, the store
also had an employee, who was referred to as a greeter, stand near the exit.  Although Delrosario offered inconsistent
testimony about precisely where the greeter stood in relation to the vestibule
and the E.A.S., Delrosario testified clearly that he stopped Barrett and Turner
when Barrett had pushed the cart past all points of sale and the women were
next to the store’s greeter.  Delrosario
admitted that he had not watched the surveillance video recording of the
incident. 

The State offered
additional evidence, including the testimony of Deputy B. Murray who arrived at
Wal-Mart after the incident and arrested Barrett and Turner.  According to Murray, although he did not witness the incident,
it was his understanding, after speaking with Delrosario, that the women were
past all points of sale at the time that Delrosario stopped them.  The State entered into
evidence a picture of a non-translucent container like the one in Barrett’s
cart and a receipt prepared by a Wal-Mart employee showing that there were 88
items totaling $819.97 in the cart.  At
the close of its case, the State entered into evidence Barrett’s stipulation to
two prior theft convictions.  

Barrett offered the
testimony of Chrissandra Simpson, a third woman who
accompanied Barrett and Turner to Wal-Mart.  Simpson testified that although all three
women arrived at the store together, Simpson parted ways with Barrett and Turner
when they got inside the store and later met back with them to continue
shopping.  According to Simpson, she
chose the large plastic container that Barrett and Turner used to hold the
items because she needed a hamper for her aunt. 
Simpson testified that after seeing the length of the checkout lines, the
women decided to put all of their merchandise into one basket and checkout
together but pay separately.  According
to Simpson, none of the women intended to leave the store without purchasing
the items in the cart.  Rather, she
testified that at the time the women were stopped by Delrosario, they had approached
the greeter so Simpson could ask where to find an adapter for her aunt’s
dryer.  Simpson testified that Barrett
and Turner stayed behind her with the cart and never passed the greeter.  Simpson also testified that Barrett would have
been able to pay for her items because Barrett had cash and received financial
assistance from two government programs.  

A jury found Barrett
guilty of third-offender theft and sentenced her to one and a half years in
prison.   

 

 

Standard
of Review

This
court reviews legal
and factual sufficiency challenges using the same standard of review.  Ervin
v. State, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref’d).  Under this standard, evidence is
insufficient to support a conviction if considering all record evidence in the
light most favorable to the verdict, a factfinder
could not have rationally found that each essential element of the charged
offense was proven beyond a reasonable doubt. 
Gonzalez v. State,
337 S.W.3d 473, 478 (Tex. App.—Houston [1st Dist.] 2011, pet. ref’d) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781,
2789 (1979)).  Evidence is insufficient
under this standard in four circumstances: (1) the record contains no evidence
probative of an element of the offense; (2) the record contains a mere
“modicum” of evidence probative of an element of the offense; (3) the evidence
conclusively establishes a reasonable doubt; and (4) the acts alleged do not
constitute the criminal offense charged. 
Id. at
479 (citing Jackson, 443
U.S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2796).  If an appellate court finds the evidence
insufficient under this standard, it must reverse the judgment and enter an
order of acquittal.  Id.  

An appellate court “determine[s]
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence viewed in the light most favorable to the
verdict.”  Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim.
App. 2007) (quoting Hooper v. State, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)).  When the record supports conflicting
inferences, an appellate court presumes that the factfinder
resolved the conflicts in favor of the verdict and defers to that
resolution.  Id. (citing Jackson, 443 U.S. at 326, 99 S. Ct. at
2793).  We treat direct and circumstantial
evidence equally: circumstantial evidence can be as probative as direct
evidence, and “circumstantial evidence alone can be sufficient to establish
guilt.”  Id. (quoting
Hooper, 214 S.W.3d at
13). 

Applicable Law

A person commits theft if he unlawfully
appropriates property with intent to deprive the owner of property.  Tex. Penal Code Ann. § 31.03(a) (West Supp.
2011).  A
person appropriates an item if he acquires or otherwise exercises control over
property other than real property.  Tex. Penal Code Ann. §31.01(4)(B) (West Supp. 2011).  An appropriation of
property is unlawful when “it is without the owner’s effective consent.”  Id.
§ 31.03(b)(1).  There are three main elements of theft:
(1) an appropriation of property (2) that is unlawful (3) and is committed with
the intent to deprive the owner of the property.  Id.  

The offense of theft becomes a state
jail felony if the value of the property stolen was less than $1,500.00 and the
accused has been previously convicted two or more times of any grade of theft.  See Tex. Penal Code Ann. § 31.03(e)(4)(D).

 

Analysis

On appeal, Barrett
argues that the State did not offer sufficient evidence for the jury to find
beyond a reasonable doubt that she unlawfully appropriated the property or that
she intended to deprive Wal-Mart of its property.  

Barrett first contends
that the evidence is insufficient to show she unlawfully appropriated Wal-Mart’s
property because the State’s primary witness, Delrosario, was biased and offered
inconsistent testimony about whether the women had walked past the final point
of sale, and Simpson testified clearly that Barrett had not done so.  Although Delrosario made somewhat
inconsistent statements about where the greeter usually stands, he testified clearly
that he stopped the women after he saw Barrett push the shopping cart past all
points of sale.  To the extent that Barrett
argues the jury could not have relied on Delrosario’s testimony because of his inconsistent
statements about where the greeter was positioned, or because of his alleged
bias, we reject her arguments because we must presume that the jury decided all
conflicts in evidence in favor of the verdict and defer to the factfinder’s determination on the credibility of witnesses.  See
Clayton, 235 S.W.3d at 778; Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). 

With respect to Barrett’s claim that there was insufficient
evidence that her exercise of control over the items was without the owner’s
effective consent insofar as she did not exit the store with the merchandise,
we note that the State was not required to make such proof to prove theft.  “[I]t is not essential
that the property be taken off the premises; it is instead only essential that
the evidence show an ‘exercise of control over the property,’ coupled with an ‘intent
to deprive the owner of the property.’”  Hill v. State, 633 S.W.2d
520, 521 (Tex. Crim. App. 1981).  Here,
the evidence showed that Barrett controlled the property: Delrosario testified
that Barrett was pushing the shopping cart and that most of the items were
concealed in a plastic container, which was itself partially concealed under
other merchandise.  We conclude that the
evidence was sufficient to support the jury’s finding that Barrett exercised
control over Wal-Mart’s property without Wal-Mart’s effective consent.  See Tex. Penal Code Ann. §31.03(a); Hill, 633 S.W.2d at 521 (evidence
sufficient to show theft when appellant put guns under his shirt but removed
them before fleeing store); see Hawkins v. State, 214 S.W.3d 668, 670
(Tex. App.—Waco 2007, no pet.) (evidence sufficient to
prove theft when appellant climbed over hardware store fence, picked up roll of
barbed wire, but dropped it when startled by employee).  

In her second argument,
Barrett contends that the evidence was insufficient to prove intent.  In support of this claim, she points out that
the evidence showed her ability to pay for the items.  She also contends that the jury could not
have found beyond a reasonable doubt that she had the intent to deprive
Wal-Mart of its property because she never left the store.  “Proof of a culpable mental state generally
relies on circumstantial evidence.”  Gahagan v. State, 242 S.W.3d 80, 86 (Tex.
App.—Houston [1st Dist.] 2007, pet. ref’d) (citing Dillon v. State, 574 S.W.2d 92, 94 (Tex.
Crim. App. 1978)).  Intent to deprive may
be inferred from the circumstances, including “the words, acts and conduct of
the accused.”  Banks v. State, 471 S.W.2d 811, 812
(Tex. Crim. App. 1971); Winkley v. State, 123 S.W.3d 707, 713 (Tex. App.—Austin
2003, no pet.).  Although the evidence
demonstrated that Barrett had cash in her possession, that is not conclusive
evidence that she lacked intent.  The
jury heard testimony that Barrett concealed forty-three cans of formula in a large
plastic container.  It also heard that
Barrett and Turner put several additional items in the container, put the lid
on the container, placed rugs and diapers on top of the lid, and that Barrett
pushed the shopping cart past the final point of sale without paying for the
items.  Based on this evidence, we
conclude that a rational jury could have found beyond a reasonable doubt that
Barrett unlawfully
appropriated property with the intent to deprive the owner of the
property.  Tex. Penal Code Ann. § 31.03(a); see Hill, 633 S.W.2d at 521; Hawkins,
214 S.W.3d at 670; Butler v. State, 
No. 01-10-00725-CR, 2012 WL 1379628, at *5 (Tex. App.—Houston [1st Dist.] Apr. 19, 2012, no. pet. h.) (mem.
op., not designated for publication) (evidence appellant hid
cellular telephones in his pants and walked towards exit was sufficient to show
appellant’s intent to deprive owner of items even though appellant did not
leave store and attempted to reshelve items). 

Conclusion

We affirm the judgment
of the trial court. 

 

                                                                   Rebeca
Huddle

                                                                   Justice


 

Panel consists of Justices Jennings, Massengale, and
Huddle.

Do not publish. 
 Tex. R. App. P. 47.2(b).











[1]
          While Delrosario worked for
Wal-Mart at the time of the incident, he is now a Deputy with the Harris County
Sherriff’s Department.

 





[2]           Although Delrosario did not specify in
his testimony which additional items the women had placed in the container, the
inventory receipt showed the women had also placed feminine products, candles,
and undergarments in the container.